Nicole E. Lovelock, Esq.
Nevada State Bar No. 11187
Kimberley A. Hyson, Esq.
Nevada State Bar No. 11611
**JONES LOVELOCK**
6600 Amelia Earhart Court, Suite C
Las Vegas, Nevada 89119
Tel: (702) 805-8450
Fax: (702) 805-8451
nlovelock@joneslovelock.com
khyson@joneslovelock.com
*Local Counsel for Plaintiff wedi Corp.*

Daniel J. Becka, Esq. (*Pro Hac Application Forthcoming*)
**Law Offices of Daniel J. Becka**
30 N. LaSalle Street, Suite 2727
Chicago, IL 60602
T: (312) 646-1092
F: (312) 278-2455
E: dan@dbeckalaw.com

Justin C. Kanter, Esq. (*Pro Hac Application Forthcoming*)
**Gaido & Fintzen**
30 N. LaSalle Street, Suite 2727
Chicago, IL 60602
T: (312) 346-7855
F: (312) 346-8317
E: jkanter@gaido-fintzen.com
*Counsel for Plaintiff wedi Corp.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| WEDI CORP., | Case No. |
| Plaintiff, | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| v. | |
| HYDROBLOK GRAND INTERNATIONAL LTD., HYDROBLOK GRAND INTERNATIONAL INC., and HYDRO-BLOK USA LLC, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff wedi Corp. ("Plaintiff" or "wedi") brings this Complaint for Damages and Injunctive Relief against Defendants Hydroblok Grand International, Ltd. ("Hydroblok Grand Canada"), Hydroblok Grand International Inc. ("Hydroblok Grand Nevada"), and Hydro-Blok USA LLC ("Hydroblok USA") (collectively, "Defendants"), and alleges as follows:

## THE PARTIES

1. Plaintiff wedi is an Illinois corporation that manufactures and distributes building materials and sealants used in the construction of waterproof shower systems and other tiled wet rooms throughout the United States and elsewhere. wedi's products are sold worldwide and are manufactured by wedi in the United States and by wedi's parent company in Germany. wedi has been selling its products in the United States since 2004.

2. Among the products distributed by wedi are a composite board product and shower accessories used in the building and renovation industry for such applications as the construction of waterproof shower systems or other walls on which tile or stone may be affixed ("wedi Products"). wedi Products are comprised of a 100% waterproof blue core made from extruded polystyrene ("XPS") rigid foam covered on both sides with a layer of cement resin (mortar) with an embedded mesh reinforcement.

3. wedi and Defendants are direct competitors in the waterproof shower systems market in the United States, vying for the same dollars from the same consumers. Defendants import Hydro-Blok Products ("Hydro-Blok Products") from China and sell them in the United States and elsewhere. The Hydro-Blok Products were developed to emulate and compete with the wedi Products and are made with a green XPS foam core covered on both sides with a layer of cement resin with an embedded mesh reinforcement.

4. Defendant Hydroblok Grand Canada is a Canadian corporation. Hydroblok Grand Canada imports Hydro-Blok Products into the United States from China for sale to distributors, wholesalers, retailers, end users, and others in this country and in Nevada, including to Hydroblok USA and Hydroblok Grand Nevada. Hydroblok Grand Canada uses the same website (www.hydroblok.com) and the same marketing materials and advertisements as the other

Defendants discussed herein to market and sell its products to persons in this country, including in Nevada.

5. Defendant Hydroblok Grand Nevada is a Nevada corporation with its registered agent and advertised headquarters in Carson City, Nevada. Hydroblok Grand Nevada imports Hydro-Blok Products into the United States from China and sells to wholesalers, retailers, end users, and others in this country, including in Nevada. Hydroblok Grand Nevada uses the same website and the same marketing materials and advertisements as the other Defendants discussed herein to market and sell its products to persons in this country, including in Nevada.

6. Defendant Hydroblok USA is a Washington limited liability company with its principal place of business in Woodinville, Washington. Hydroblok USA sells Hydro-Blok Products to wholesalers, retailers, end users, and others in this country, including in Nevada. Hydroblok USA uses the same website and the same marketing materials and advertisements as the other Defendants discussed herein to market and sell its products to persons in this country, including in Nevada.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1332(a) because Plaintiff asserts claims under section 43(a) of the Lanham Act (15 U.S.C. §1125) and because this action is between citizens of different States and the matter in controversy exceeds $75,000, exclusive of interest and costs. This Court also has subject matter jurisdiction over wedi's state law claims pursuant to the principals of pendant jurisdiction under 28 U.S.C. §1367(a).

8. This Court has general personal jurisdiction over Defendant Hydroblok Grand Nevada because it is a Nevada corporation and has its principal place of business here.

9. This Court has specific personal jurisdiction over Defendants Hydroblok Grand Canada and Hydroblok USA because, *inter alia*, each of them markets and sells Hydro-Blok Products in Nevada and elsewhere utilizing the same false advertising statements and materials out of which wedi's claims herein arise. Defendants Hydroblok Grand Canada and Hydroblok USA use the same website to market their Hydro-Blok Products in Nevada and elsewhere, and both claim on

JONES LOVELOCK
6600 Amelia Earhart Ct., Suite C
Las Vegas, Nevada 89119

that website that their Head Office is the same as Defendant Hydroblok Grand Nevada located in Carson City, Nevada.

10. Hydroblok Grand Canada sells Hydro-Blok Products directly to a Nevada corporation, Hydroblok Grand Nevada, as well as to Hydroblok USA with the knowledge and intent that such Hydro-Blok Products will be sold in Nevada and to Nevada residents and others using the same marketing materials, product markings, and product packaging containing the false advertising statements out of which wedi's claims herein arise.

11. Upon information and belief, the marketing materials, product markings, and product packaging containing the false advertising statements originate with Hydroblok Grand Canada, which supplies them to Hydroblok Grand Nevada and Hydroblok USA for further distribution and use in connection with the sale of Hydro-Blok Products in Nevada and elsewhere. Hydroblok Grand Canada also uses the same Carson City, Nevada, address as Hydroblok Grand Nevada in connection with the importation by Hydroblok Grand Canada of the Hydro-Blok Products into this country.

12. Defendants also advertise on their website that Hydroblok USA has at least two sales agents responsible for sales of Hydro-Blok Products in Nevada and Defendants advertise that their Hydro-Blok Products may be purchased through several distributors located in Las Vegas, Nevada. As noted above, the marketing and sales of the Hydro-Blok Products in Nevada and elsewhere utilize the same false advertising statements out of which wedi's claims herein arise.

13. Venue is appropriate under 28 U.S.C. §1391(b)(1) because all Defendants are residents of this State pursuant to 28 U.S.C. §1391(c)(2) (i.e., all are subject to the Court's personal jurisdiction here). Venue is also appropriate under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims, including the publication and dissemination by Defendants of false advertising claims regarding Hydro-Blok Products and the marketing and sale of Hydro-Blok Products utilizing false advertising claims, occurred in Nevada.

14. Venue in the unofficial Southern Division of this Court is appropriate under LR IA 1-8 because the false advertising materials out of which wedi's claims herein arise are used by Defendants in Nevada, including in Clark County.

/ / /

**DEFENDANTS' FALSE ADVERTISING**

15. For Defendants to be able to successfully sell their Hydro-Blok Products in the United States their finished products need to be laboratory tested and legitimately certified by a recognized third-party organization as complying with certain codes and standards applicable to the plumbing industry, including IAPMO PS 106 entitled "Tileable Shower Receptors and Shower Kits." The International Association of Plumbing and Mechanical Officials ("IAPMO") is an organization that, *inter alia*, develops codes and standards applicable to the mechanical and plumbing industries.

16. Beginning at least since mid-2018 (the exact dates of which are known exclusively to Defendants) and continuing to the present, and in connection with their offer and sale of Hydro-Blok Products in this country and elsewhere (including at https://www.hydroblok.com/how-it-works/), Defendants began advertising in product brochures, technical specification sheets, other written sales materials, and on their website that their Hydro-Blok Products are "ICC-ES certified." "ICC-ES" stands for the International Code Council Evaluation Service. On information and belief, Defendants also make the same "ICC-ES certified" claim in oral presentations to customers and potential customers, including in Nevada.

17. Defendants allow and encourage their distributors, including Hydroblok USA in the offer and sale of products in Nevada (and elsewhere), to use the same advertising materials and to refer customers and potential customers to their website containing the "ICC-ES certified" claims discussed herein. The specific advertising materials containing these representations used by Defendants and the specific dates they appear are known exclusively to Defendants.

18. Defendants also mark their Hydro-Blok Products and/or the product packaging with an "ICC-ES" logo, necessarily implying that their Hydro-Blok Products offered for sale were legitimately certified by the ICC-ES as complying with the codes and standards applicable to their products and in accordance with the ICC-ES' standards and practices.

19. Since at least mid-2018 and continuing to the present, Defendants have stated in their advertising materials (e.g., product brochures, website, other product information):

/ / /

JONES LOVELOCK
6600 Amelia Earhart Ct., Suite C
Las Vegas, Nevada 89119

The ICC Evaluation Service (a subsidiary of the International Code Council), or ICC-ES is a non-profit company which is the industry leader in performing technical evaluations for code compliance, providing regulators and construction professionals with clear evidence that products comply with codes and standards.

Commercial construction projects, as well as many residential construction developments, require specified products to be certified or listed through a 3rd party such as ICC-ES. For HYDRO-BLOK'S ICC-ES listing and other certification and compliance documents, please see our website.

20. Since at least 2018 Defendants have also advertised in materials available on their website:

**ICC-ES** – Considered by many to be the "GOLD STANDARD" for technical evaluations of building products, components, methods, and materials. ICC-ES is a non-profit, limited liability company that does technical evaluations of building products, components, methods, and materials. Agencies, municipalities and builders have all come to trust ICC-ES reports to ensure code compliance and enforce building regulations that warrant regulatory approval. ICC-ES evaluation reports are public documents, available free of charge on the Web, not only to building regulators and manufacturers, but also to contractors, specifiers, architects, engineers, and anyone else with an interest in the building industry. All of these people look to ICC-ES evaluation reports for evidence that products and systems are code-compliant. For more information on ICC-ES please visit the website: https://icc-es.org/

21. Defendants also advertise that "Hydro-Blok shower systems are a great choice for residential or commercial projects," necessarily implying that Hydro-Blok Products have been legitimately certified to comply with all applicable residential and commercial codes.

22. To further emphasize how their advertised ICC-ES certification is relied on by building inspectors throughout the country as supposed evidence that Hydro-Blok Products on the market comply with applicable codes and standards, Defendants advertise on their website a document prepared by the Los Angeles Department of Building and Safety in reliance on Defendants' claim that their Hydro-Blok Products are legitimately certified to comply with the required IAPMO PS 106 standard. The document states, in relevant part:

**Question:**
Is this tileable shower system ok for use in the City of LA?

**Answer:**
Yes.

The contractor provided the product listing information pictured below [ICC-ES certificate dated September 2019] indicating that the ICC has certified the product as compliant with the following standard: **IAPMO PS 106-2015el**. The ICC is approved to verify this listing per LADBS Mechanical Testing Laboratory "List of Approved Listing and Testing Agencies" (Pg 38).

23.     Further emphasizing the importance of having legitimately certified products, the ICC-ES states on its website:

<u>**LOOK FOR THE MARK!**</u>

<u>Code Officials look for the ICC-ES Mark on building and plumbing products for peace of mind when approving products. ICC-ES is widely recognized for its thorough technical evaluations, speed and gold standard in customer service.</u>

(https://icc-es.org/)

24.     The ICC-ES further explains (at https://icc-es.org/mark/):

ICC-ES marks provide evidence that a product has gone through a rigorous technical evaluation by expert staff, ensuring compliance to the latest applicable codes and standards.

ICC-ES marks are the most widely accepted and recognized in North America and other regions around the world, and the preferred choice by code officials and government regulators – allowing them to instantly approve products for installation with confidence and peace of mind.

**ICC marks are found on a wide variety of Building, Plumbing, Mechanical, Swimming Pool and Spa, and Fuel Gas products around the world.**

25.     Claiming that Hydro-Blok Products are "ICC-ES certified" and putting the ICC-ES certification mark on the Hydro-Blok Products necessarily implies that the Hydro-Blok Products being sold were tested by an accredited laboratory per ICC-ES policy and then evaluated by the ICC-ES and found to comply with applicable industry standards and building codes (including IAPMO PS 106) in accordance with ICC-ES' standards and practices. As ICC-ES states when explaining their product evaluation reports (at https://icc-es.org/about-us-2/):

**The Report Process**

The report process begins when a company submits an application for an evaluation report. The application is normally submitted with supporting data such as product information and test reports, along with appropriate fees to cover the cost of the evaluation. Once the application is received, ICC-ES assigns a member of its

technical staff to evaluate the data and work with the applicant to make sure compliance is proven, before a report is issued, with either the building code or an ICC-ES acceptance criteria. (The latter documents are approved by an ICC-ES Evaluation Committee that is made up of building officials from across the United States).

26. The products tested on which an ICC-ES certification is based are required to be final production samples taken from either the manufacturer's production line, inventory (stock), or products already in the market. As discussed above, ICC-ES certification is intended to "provide evidence" that the listee's products being sold were found to comply with the relevant codes and standards in accordance with ICC-ES practices. ICC-ES listing programs assist those enforcing model codes to determine whether a given subject complies with applicable standards and applicable codes.

27. ICC-ES does not accept the testing of prototype samples for certification of a company's products. Prototypes are sample representations of a product in development and are used to evaluate the concept and design of the product and develop the manufacturer's production process to be used to make the finished product. This stage of manufacturing—also known as the product development stage—is for the purpose of testing out the design to see if it is feasible or if changes need to be made before going into production. Product and manufacturing changes typically occur in the development of the product and the completion of the manufacturing processes to be used for commercial production.

28. Although ICC-ES does not accept the testing of prototype samples for final product certification purposes, it may initially accept the testing of prototype samples from an accredited laboratory to begin the preliminary application process. In such cases, however (and assuming that the ICC-ES is aware that the tests were done on prototypes), the ICC-ES requires that new testing on final production samples be done within six to eight months to ensure that the finished product to be sold in the market with the ICC-ES certification mark complies with the standards and codes applicable to that product.

29. When the ICC-ES itself does not obtain the test samples, arrange for the testing, and receive the test reports from the accredited laboratory, the ICC-ES must rely on the applicant to provide test reports based on actual finished product and not mere prototypes. The applicant is

responsible for obtaining those test reports showing compliance with the applicable codes and standards on which the ICC-ES relies in certifying products as well as assuring that the product tested was the final product being sold and not some sample made during its development stage.

30. ICC-ES certification was deceptively obtained for the Hydro-Blok Products in 2018 based on the submission to the ICC-ES of test reports using Hydroblok prototypes that were made in 2014 (or earlier) when Hydro-Blok Products were still in the development stage. They were not based on the testing of samples from the manufacturer's finished production line, inventory, or from the market as required by the ICC-ES.

31. The ICC-ES, however, was not informed that the samples tested were only prototypes rather than actual production samples prior to the ICC-ES certification of the Hydro-Blok Products in 2018. The submission of the application and test reports to the ICC-ES for certification necessarily implied that the tests were based on actual production samples. Although ICC-ES certification must be renewed each year, the Defendants never thereafter informed the ICC-ES that its initial certification and all subsequent years' certifications were based on the testing of prototypes contrary to the ICC-ES' standards and practices.

32. The ICC-ES itself never tested any finished Hydro-Blok Products nor was it given any additional test reports from finished Hydro-Blok Products showing compliance with all applicable codes and standards, including the all-important IAPMO PS 106 standard. All ICC-ES certifications of Hydro-Blok Products from 2018 to the present were based on the misrepresentation by the applicants to the ICC-ES that the samples tested <u>were</u> finished production samples of the Hydro-Blok Products.

33. The ICC-ES was also never informed that every component of the Hydro-Blok Products (i.e., the foam core, cement, and mesh) had been changed many times—both in the materials and the manufacturing processes used to make the products—since the prototype samples tested were made (in or before 2014) and prior to the submission of the testing reports to ICC-ES in 2018. Nor was the ICC-ES ever advised that the first production Hydro-Blok Products were not manufactured until more than a year after the prototypes were tested. As a result, ICC-ES did not require that new testing be done on final production samples of Hydro-Blok Products for compliance

with all applicable standards and codes because it believed the testing already done had been on actual production samples.

34. Defendants' advertising claims that the Hydro-Blok Products are "ICC-ES certified" and their use of the ICC-ES mark on each of their products offered for sale are literally false because Hydro-Blok Products have never been legitimately certified by the ICC-ES based on the testing of actual finished products in accordance with ICC-ES standards and practices. Defendants' sales of Hydro-Blok Products from and after the time they falsely began claiming ICC-ES certification for their products since at least mid-2018 were dependent on, and as a result of, their false "ICC-ES certified" claim and their misuse of the ICC-ES mark on their products. As discussed above, Defendants have been selling their Hydro-Blok Products under false pretenses.

35. Defendants' "ICC-ES certified" claims and use of the ICC-ES mark are false statements of fact about the Hydro-Blok Products made in commercial advertisements and promotions. Defendants' "ICC-ES certified" claims deceived or had the tendency to deceive a substantial segment of its target audience, the deception was material, and Defendants caused the statements to enter interstate commerce. wedi has been and is likely to be injured as a result of the false "ICC-ES certified" claims and misuse of the ICC-ES mark.

36. Defendants' "ICC-ES certified" claims and use of the ICC-ES mark caused and are likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and is not outweighed by countervailing benefits. Defendants' false advertising impacts the public interest and is not based on a single transaction; Defendants' false advertising statements have been made continually since at least 2018 through today.

37. wedi has been injured by Defendants' false advertising and Defendants have obtained profits which they would not have otherwise received. wedi's injuries include lost profits and loss of customers, confusion of existing and potential customers, a diminution of the value of wedi's products compared to the falsely advertised value of Hydro-Blok Products, and the dilution of wedi's goodwill.

38. In addition to monetary damages and other remedies, a permanent injunction prohibiting the use by Defendants of the false "ICC-ES certified" claim and use of the ICC-ES mark

and requiring corrective advertising informing the public of their deceptive practices and providing corrected information is warranted.

**COUNT I – LANHAM ACT, 15 U.S.C. §1125**

39. wedi realleges and incorporates herein by reference paragraphs 1 through 38 above as if fully stated herein.

40. Defendants used in interstate commerce through commercial advertising or promotion literally false and misleading descriptions or representations of fact which misrepresent the nature, characteristics, and qualities of Hydro-Blok Products.

41. Defendants' literally false and misleading statements actually deceive or have a tendency to deceive a substantial segment of its intended audience (e.g., distributors, retailers, and users of shower system products sold by Defendants and wedi) and are material to their purchasing decisions.

42. Defendants' "ICC-ES certified" claims and use of the ICC-ES mark are literally false statements. In the alternative, if the statements made by Defendants are literally true or ambiguous, they are misleading in their implications, and are likely to confuse and deceive a substantial portion of their intended audience in connection with their purchasing decisions.

43. Defendants intended to deceive customers, potential customers, and others through use of their false or misleading statements about Hydro-Blok Products and to take away customers from wedi.

44. Defendants' conduct is in violation of Section 43(a) of the Langham Act, 15 U.S.C. §1125(a).

45. wedi has been injured and is likely to continue to be injured by Defendants' false advertising.

46. wedi is entitled to an injunction against Defendants under 15 U.S.C. §1116(a) according to the principles of equity and upon such terms as the Court may deem reasonable to prevent the continued violation of subsection (a) of Section 43 of the Langham Act.

47. wedi is also entitled to recover (1) Defendants' profits, (2) damages sustained by wedi, and (3) the costs of the action pursuant to 15 U.S.C. §1117(a). wedi is further entitled to

enhanced damages up to three times the amount of actual damages and reasonable attorneys' fees because of Defendants' deceptive conduct.

### COUNT II – CONSUMER FRAUD IN VIOLATION OF NRS 41.600

48. wedi realleges and incorporates herein by reference paragraphs 1 through 47 above as if fully stated herein.

49. Defendants engaged in consumer fraud in violation of Nevada Revised Statute (NRS) 41.600 when, in the State of Nevada, Defendants engaged in deceptive trade practices under the Nevada Deceptive Trade Practices Act, NRS 598. Defendants knowingly made and allowed their resellers to make false representations as to the certification of the Hydro-Blok Products, made false representations in transactions, failed to disclose material facts in connection with the sale of the Hydro-Blok Products, and violated a federal statute (the Lanham Act) relating to the sale of goods.

50. Defendants' wrongful conduct caused, and is likely to cause, wedi to be damaged.

51. Injunctive relief is warranted to prohibit further violations of NRS 41.600.

### JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, plaintiff hereby demands trial by jury.

### PRAYER FOR RELIEF

WHEREFORE having asserted claims entitling it to relief, wedi requests that this Court grant judgment in its favor, and jointly and severally against the defendants as follows:

(1) For money damages and disgorgement of profits in an amount to be proven at trial and as permitted by law.

(2) For prejudgment and postjudgment interest as allowed by law.

(3) Injunctive relief.

(4) All reasonable costs of suit.

(5) Attorneys' fees and costs for each claim where a recovery of attorneys' fees and costs is allowed.

(6) Punitive damages, enhanced damages, and/or civil penalties as allowed by law.

(7) For such other and further relief as the Court may deem just, equitable, and proper and as permitted by law.

DATED this 14th day of March 2022.

**JONES LOVELOCK**

*/s/ Kimberley A. Hyson, Esq.*
Nicole E. Lovelock, Esq.
Nevada Bar No. 11187
Kimberley A. Hyson, Esq.
Nevada Bar No. 11611
6600 Amelia Earhart Court, Suite C
Las Vegas, Nevada 89119
*Local Counsel for Plaintiff wedi Corp.*

Daniel J. Becka, Esq.
Law Offices of Daniel J. Becka
30 N. LaSalle Street, Suite 2727
Chicago, IL 60602
*Pro Hac Vice Application Forthcoming*
*Counsel for Plaintiff wedi Corp.*

Justin C. Kanter, Esq.
Gaido & Fintzen
30 N. LaSalle Street, Suite 2727
Chicago, IL 60602
*Pro Hac Vice Application Forthcoming*
*Counsel for Plaintiff wedi Corp.*

13